## CRANE et al. v. HARRISON.
### Civil Action No. 43C1065.

District Court, N. D. Illinois, E. D.
Sept. 20, 1946.

Metellus Thomson, Jr., and Virgil C. Lutrell, both of Chicago, Ill., for plaintiffs.

J. Albert Woll, of Chicago, Ill., for defendant.

HOLLY, District Judge.

The question to be answered here is what was the fair market value on November 7, 1931, of certain shares of the capital stock of Crane Co., an Illinois corporation, which Charles R. Crane II received as a bequest from the estate of his uncle Richard T. Crane, Jr., who died on that date. In the settlement of the estate the Commissioner fixed the value of the stock on that date at $10.35 per share. Charles R. Crane in the years 1935, 1936 and 1937 sold shares of the stock at various rates per share and in computing capital gains and losses in the joint income tax returns of himself and his wife fixed the November 7, 1931, value at $18 per share in his 1935 return, at $12.87 per share in the 1936 return and $10.35 per share in the 1938 return. Thereafter the Commissioner redetermined the taxes for those years and assessed a deficiency tax against plaintiffs, which they paid. He based the deficiency assessment on the basis of $10.35 a share as the market value on November 7, 1931, and plaintiffs sue to recover, claiming that the fair market value on that date was $18 per share.

On November 7, 1931, there were outstanding 2,366,901 common shares of which Richard T. Crane, Jr., and members of the Crane family owned all but 14,809 shares. Most of these were held by employees who had acquired them by purchase or by gift from Mr. Crane.

This stock was apparently traded in the market, but the trading was not real. Mr. Crane felt an obligation to his employees to protect the stock he had given them or they had purchased from him and he had given orders to the treasurer to buy what came into the market at $40 a share, the price the employees had paid for it. As time went on he reduced the price which the company would pay until, at the time of his death, it was $18, a share. But, as the witness Berryman, now Chairman of the Board and First Vice President at the time of Mr. Crane's death, states, "there was very little floating, there was no market for it at all. When the big depresssion came, and Mr. Crane died, and I became President, of course, I could not see any reason in holding up that stock to $18 a share, because that would have been very bad business, if we would buy or own stock at $18 a share when we needed every dollar we had to carry us along.

"So with no buyers at all, it drifted down, I do not know what it drifted down to, but practically no value."

▉ In this case, as in all others, the burden is upon the plaintiffs to prove that they are entitled to recover. They must show by a preponderance of the evidence that the fair market value of the shares on November 7, 1931, was greater than the value fixed by the Commissioner. The fair market value is the price a willing seller could get from a willing buyer, neither being under compulsion to buy or sell. Neither side in this case has attempted to show that during the year 1931 there was an open market for this stock, or any trading in it by sellers and buyers of that character. The evidence on that question consists of opinions by "experts" with the supporting data on which they base their opinions. Plaintiff produced as a witness Mr. Corliss D. Anderson, an "investment analyst," who had been engaged in that occupation since 1929 and who had for 14 years been in the office of the treasurer of the University of Chicago where he was analyst in charge of research for the University's endowment fund which amounted to about $80,000,000. He compared the general condition for a period of years of the Crane Co. with four other companies engaged in manufacturing similar articles together with the price range of their stocks, took into consideration the history of the company, and concluded that on November 7, 1931, the fair market value of Crane Co. common stock was between $15 and $20 a share.

William T. Jones, another experienced investment banker having examined the data on which Anderson based his estimate, testified that the fair market value of the stock at the time of the death of Richard R. Crane, Jr., was $25 a share.

The Government's analyst, John Alden Grimes, having had experiences which qualified him as an expert, making similar comparisons with other like companies and considering the history of the company, was of the opinion that the fair market value of the stock on the date in question was $9.75 per share.

In arriving at their opinions Anderson gave more weight to book value of assets, net worth and record of payment of dividends for five years prior to 1931 than did Grimes, who thought more important the situation with reference to outstanding securities, the capital structure and the fact that the company had been compelled to issue bonds in the amount of $12,000,000 in 1930 to secure cash, which in his opinion would make it difficult to secure other financing in that time of depression and that it would be dangerous to continue payment of dividends on preferred stocks.

In addition to the expert Grimes, the Government called two witnesses, Walter Evenson who had been treasurer of the company for 20 years and was one of the executors of the will of Richard T. Crane, Jr., and Mark W. Lowell, a Vice President of the Continental Illinois National Bank, the bank being one of the executors of the will. He, Lowell, had familiarized himself with the affairs of the Crane Co. and made the tax return for the estate. His opinion at that time was that the common stock had a fair market value of $3.75 per share. On his investigations of the affairs of the company he found its situation very unfavorable. The country was in the midst of the depression and there was no way of knowing when the trend would reverse itself. The Crane Co. was a heavy industry with a large organization which was expensive and hard to maintain at times. The company had cash enough at that time to get along on but there was no surplus and it required good management to run the company on the cash it had. Dividends had been paid on the common stock up to the time of Mr. Crane's death, but none thereafter and payment of dividends on preferred was discontinued six months thereafter.

Mr. Evenson, another one of the executors of the will, testified that he had been treasurer of the company for twenty years; that he participated in the preparation of the tax return for the estate and signed it in which the fair market value of the stock was claimed to be $3.75 per share. At that time he was familiar in a general way with the books and records of the company and..

of its general condition. He knew that the business of the company generally was bad, that sales and profits were going down, that the working capital was shrinking and the net worth of the company was declining.

■ From a consideration of the foregoing and the other evidence in the case I am of the opinion that the plaintiffs have failed to sustain the burden that lay upon them of proving that the fair market value of the shares of stock in question exceeded the value the Commissioner placed upon it. Defendant is entitled to judgment dismissing the action.